| | |
|---|---|
| **To:** | ADIL PALWALA (zawanilaw@gmail.com) |
| **Subject:** | U.S. Trademark Application Serial No. 90050503 - HOLY COW - 4018032 |
| **Sent:** | October 29, 2020 05:57:32 PM |
| **Sent As:** | ecom113@uspto.gov |
| **Attachments:** | Attachment - 1  <br>Attachment - 2  <br>Attachment - 3  <br>Attachment - 4  <br>Attachment - 5  <br>Attachment - 6  <br>Attachment - 7 |

**United States Patent and Trademark Office (USPTO)**
**Office Action (Official Letter) About Applicant's Trademark Application**

**U.S. Application Serial No.** 90050503

**Mark:** HOLY COW

**Correspondence Address:**
Z A WANI
LAW OFFICE OF ZAWANI
2ND FLOOR
167 05 HILLSIDE AV
JAMAICA, NY 11432

**Applicant:** ADIL PALWALA

**Reference/Docket No.** 4018032

**Correspondence Email Address:**

zawanilaw@gmail.com

## NONFINAL OFFICE ACTION

The USPTO must receive applicant's response to this letter within  six months of the issue date below or the application will be **abandoned**.  Respond using the Trademark Electronic Application System (TEAS).  A link to the appropriate TEAS response form appears at the end of this Office action.

**Issue date:  October 29, 2020**

The referenced application has been reviewed by the assigned trademark examining attorney.  Applicant must respond timely and completely to the issue(s) below.  15 U.S.C. §1062(b); 37 C.F.R. §§2.62(a), 2.65(a); TMEP §§711, 718.03.

SUMMARY OF ISSUES:

- Section 2(d) Refusal – Likelihood of Confusion

Exhibit 11

- Prior-filed Pending Application Advisory
- Clarification of Entity Type Requirement
- Clarification of Domicile Address Requirement
- Amended Mark Description and Color Claim Requirement

SECTION 2(d) REFUSAL – LIKELIHOOD OF CONFUSION

Registration of the applied-for mark is refused because of a likelihood of confusion with the marks in U.S. Registration Nos. 2216797 and 3141729 (both for HOLY COW!). Trademark Act Section 2(d), 15 U.S.C. §1052(d); *see* TMEP §§1207.01 *et seq.*  See the attached registrations.

Trademark Act Section 2(d) bars registration of an applied-for mark that is so similar to a registered mark that it is likely consumers would be confused, mistaken, or deceived as to the commercial source of the services of the parties.  *See* 15 U.S.C. §1052(d).  Likelihood of confusion is determined on a case-by-case basis by applying the factors set forth in *In re E. I. du Pont de Nemours & Co.*, 476 F.2d 1357, 1361, 177 USPQ 563, 567 (C.C.P.A. 1973) (called the "*du Pont* factors").   *In re i.am.symbolic, llc*, 866 F.3d 1315, 1322, 123 USPQ2d 1744, 1747 (Fed. Cir. 2017).  Any evidence of record related to those factors need be considered; however, "not all of the *DuPont* factors are relevant or of similar weight in every case."  *In re Guild Mortg. Co.*, 912 F.3d 1376, 1379, 129 USPQ2d 1160, 1162 (Fed. Cir. 2019) (quoting *In re Dixie Rests., Inc.*, 105 F.3d 1405, 1406, 41 USPQ2d 1531, 1533 (Fed. Cir. 1997)).

Although not all *du Pont* factors may be relevant, there are generally two key considerations in any likelihood of confusion analysis: (1) the similarities between the compared marks and (2) the relatedness of the compared services.  *See In re i.am.symbolic, llc*, 866 F.3d at 1322, 123 USPQ2d at 1747 (quoting *Herbko Int'l, Inc. v. Kappa Books, Inc.* , 308 F.3d 1156, 1164-65, 64 USPQ2d 1375, 1380 (Fed. Cir. 2002)); *Federated Foods, Inc. v. Fort Howard Paper Co.*, 544 F.2d 1098, 1103, 192 USPQ 24, 29 (C.C.P.A. 1976) ("The fundamental inquiry mandated by [Section] 2(d) goes to the cumulative effect of differences in the essential characteristics of the goods [or services] and differences in the marks."); TMEP §1207.01.

Comparison of the Marks

Applicant's mark is the composite mark featuring the wording HOLY COW and a design. Registrant's marks are the standard character marks HOLY COW!.

Marks are compared in their entireties for similarities in appearance, sound, connotation, and commercial impression.  *Stone Lion Capital Partners, LP v. Lion Capital LLP*, 746 F.3d 1317, 1321, 110 USPQ2d 1157, 1160 (Fed. Cir. 2014) (quoting *Palm Bay Imps., Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772*, 396 F.3d 1369, 1371, 73 USPQ2d 1689, 1691 (Fed. Cir. 2005)); TMEP §1207.01(b)-(b)(v).  "Similarity in any one of these elements may be sufficient to find the marks confusingly similar."  *In re Inn at St. John's, LLC* , 126 USPQ2d 1742, 1746 (TTAB 2018) (citing *In re Davia*, 110 USPQ2d 1810, 1812 (TTAB 2014)), *aff'd per curiam* , 777 F. App'x 516, 2019 BL 343921 (Fed. Cir. 2019); TMEP §1207.01(b).

In this case, applicant's mark is highly similar to registrant's mark in appearance, sound, and commercial impression.

Registrant's marks, HOLY COW!, is virtually identical to the literal element in applicant's mark.   Marks may be confusingly similar in appearance where similar terms or phrases or similar parts of terms or phrases appear in the compared marks and create a similar overall commercial impression.  *See Crocker Nat'l Bank v. Canadian Imperial Bank of Commerce* , 228 USPQ 689, 690-91 (TTAB 1986), *aff'd sub nom. Canadian Imperial Bank of Commerce v. Wells Fargo Bank, Nat'l Ass'n* , 811 F.2d 1490, 1495, 1 USPQ2d 1813, 1817 (Fed. Cir. 1987) (finding COMMCASH and COMMUNICASH confusingly similar); *In re Corning Glass Works*, 229 USPQ 65, 66 (TTAB 1985) (finding CONFIRM and CONFIRMCELLS confusingly similar); *In re Pellerin Milnor Corp.*, 221 USPQ 558, 560 (TTAB 1983) (finding MILTRON and MILLTRONICS confusingly similar); TMEP §1207.01(b)(ii)-(iii).

The only difference in the literal elements is the exclamation point at the end of registrant's marks.  However, the addition of the exclamation point is not significant. *See, e.g., In re Samuel Moore & Co.*, 195 USPQ 237, 240 (TTAB 1977) (presence of exclamation point is of no effect in connection with descriptive mark as it remains descriptive). Accordingly, the marks are identical in part in sound and appearance.

The fact that applicant's mark includes a design does not obviate the confusing similarity of the marks.  When evaluating a composite mark consisting of words and a design, the word portion is normally accorded greater weight because it is likely to make a greater impression upon purchasers, be remembered by them, and be used by them to refer to or request the goods and/or services.  *In re Aquataine Wine USA, LLC*, 126 USPQ2d 1181, 1184 (TTAB 2018) (citing *In re Viterra Inc.*, 671 F.3d 1358, 1362, 101 USPQ2d 1905, 1908 (Fed. Cir. 2012)); TMEP §1207.01(c)(ii).  Thus, although marks must be compared in their entireties, the word portion is often considered the dominant feature and is accorded greater weight in determining whether marks are confusingly similar, even where the word portion has been disclaimed. *In re Viterra Inc.*, 671 F.3d at 1366-67, 101 USPQ2d at 1911 (citing *Giant Food, Inc. v. Nation's Foodservice, Inc.* , 710 F.2d 1565, 1570-71, 218 USPQ2d

Exhibit 11

390, 395 (Fed. Cir. 1983)). Here, because the wording is identical, purchasers will refer to both applicant's and registrant's services using the same wording, which is likely to cause source confusion.

Because the literal elements of the marks are virtually identical, and the marks have similar commercial impressions, purchasers are likely to believe the services emanate from the same source. Therefore, the marks are confusingly similar.

Comparison of the Services

Applicant's services are "Restaurant; Restaurant and café services; Restaurant and catering services; Restaurant and hotel services; Restaurant services; Restaurant services featuring sandwiches; Restaurant services, including sit-down service of food and take-out restaurant services; Cafeteria and restaurant services; Fast-food restaurant services; Hotel and restaurant services; Hotel, restaurant and catering services; Mobile café services for providing food and drink; Self service restaurants; Take-out restaurant services" in Class 43.

Registrant's services are "Restaurant and bar services" in International Classes 42 and 43. [1]

The services are compared to determine whether they are similar, commercially related, or travel in the same trade channels.  *See Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1369-71, 101 USPQ2d 1713, 1722-23 (Fed. Cir. 2012); *Herbko Int'l, Inc. v. Kappa Books, Inc.* , 308 F.3d 1156, 1165, 64 USPQ2d 1375, 1381 (Fed. Cir. 2002); TMEP §§1207.01, 1207.01(a)(vi).

Determining likelihood of confusion is based on the description of the services stated in the application and registration at issue, not on extrinsic evidence of actual use.  *See In re Detroit Athletic Co.*, 903 F.3d 1297, 1307, 128 USPQ2d 1047, 1052 (Fed. Cir. 2018) (citing *In re i.am.symbolic, llc*, 866 F.3d 1315, 1325, 123 USPQ2d 1744, 1749 (Fed. Cir. 2017)).

In this case, the application and registrations include the identical services of "restaurant services." All of applicant's other listed services include the word "restaurant" (or "café," a synonym), and these additional services are presumably encompassed by "restaurant services."      *See, e.g.*, *In re Solid State Design Inc.*, 125 USPQ2d 1409, 1412-15 (TTAB 2018); *Sw. Mgmt., Inc. v. Ocinomled, Ltd.*, 115 USPQ2d 1007, 1025 (TTAB 2015).  Thus, applicant's and registrant's services are legally identical.   *See, e.g.*, *In re i.am.symbolic, llc*, 127 USPQ2d 1627, 1629 (TTAB 2018) (citing *Tuxedo Monopoly, Inc. v. Gen. Mills Fun Grp., Inc.*, 648 F.2d 1335, 1336, 209 USPQ 986, 988 (C.C.P.A. 1981); *Inter IKEA Sys. B.V. v. Akea, LLC*, 110 USPQ2d 1734, 1745 (TTAB 2014); *Baseball Am. Inc. v. Powerplay Sports Ltd.*, 71 USPQ2d 1844, 1847 n.9 (TTAB 2004)).

Additionally, the services of the parties have no restrictions as to nature, type, channels of trade, or classes of purchasers and are "presumed to travel in the same channels of trade to the same class of purchasers."  *In re Viterra Inc.*, 671 F.3d 1358, 1362, 101 USPQ2d 1905, 1908 (Fed. Cir. 2012) (quoting *Hewlett-Packard Co. v. Packard Press, Inc.*, 281 F.3d 1261, 1268, 62 USPQ2d 1001, 1005 (Fed. Cir. 2002)).  Thus, applicant's and registrant's services are related.

Conclusion

Because the marks are highly similar and the services are closely related, there is a likelihood of purchaser confusion as to the source of the services. Therefore, registration is refused under Section 2(d) of the Trademark Act. 15 U.S.C. § 1052(d).

Although applicant's mark has been refused registration, applicant may respond to the refusal(s) by submitting evidence and arguments in support of registration.

PRIOR-FILED APPLICATION

The filing date of pending U.S. Application Serial No. 88403075 precedes applicant's filing date.  See attached referenced application.  If the mark in the referenced application registers, applicant's mark may be refused registration under Trademark Act Section 2(d) because of a likelihood of confusion between the two marks.  *See* 15 U.S.C. §1052(d); 37 C.F.R. §2.83; TMEP §§1208 *et seq.*  Therefore, upon receipt of applicant's response to this Office action, action on this application may be suspended pending final disposition of the earlier-filed referenced application.

In response to this Office action, applicant may present arguments in support of registration by addressing the issue of the potential conflict between applicant's mark and the mark in the referenced application.  Applicant's election not to submit arguments at this time in no way limits applicant's right to address this issue later if a refusal under Section 2(d) issues.

While applicant is not required to respond to the issue of the pending application, ***applicant must respond to the Section 2(d) refusal above and the requirements below within six months of the mailing date of this Office action to avoid abandonment***.

Exhibit 11

CLARIFICATION OF ENTITY TYPE REQUIREMENT

The name of an individual person appears in the section of the application intended for the trademark owner's name; however, the legal entity is set forth as a limited liability company.  Applicant must clarify this inconsistency.  *See* 37 C.F.R. §§2.32(a)(2), (a)(3)(i)-(ii), 2.61(b); TMEP §803.02(a).

If applicant is an individual, applicant should simply request that the legal entity be amended to "individual" and must indicate his/her country of citizenship for the record.  37 C.F.R. §2.32(b)(3)(i); TMEP §803.03(a).  Alternatively, if applicant is a limited liability company, applicant must provide the correct name of the limited liability company and the U.S. state or foreign country of incorporation or organization.  37 C.F.R. §2.32(a)(3)(ii); TMEP §803.03(h).

If, in response to the above request, applicant provides information indicating that it is not the owner of the mark, registration may be refused because the application was void as filed.  *See* 37 C.F.R. §2.71(d); TMEP §§803.06, 1201.02(b).  An application must be filed by the party who owns or is entitled to use the mark as of the application filing date.  *See* 37 C.F.R. §2.71(d); TMEP §1201.02(b).

CLARIFICATION OF DOMICILE ADDRESS REQUIREMENT

**Applicant must clarify applicant's domicile address.**   All applications must include the applicant's domicile address, and domicile dictates whether an applicant is required to have an attorney who is an active member in good standing of the bar of the highest court of a U.S. state or territory represent the applicant at the USPTO.  *See* 37 C.F.R. §§2.2(o)-(p), 2.11(a), 2.189; *Requirement of U.S.-Licensed Attorney for Foreign-Domiciled Trademark Applicants & Registrants*, Examination Guide 4-19, at I.A. (Rev. Sept. 2019).

An individual applicant's domicile is the place a person resides and intends to be the person's principal home.    37 C.F.R. §2.2(o); Examination Guide 4-19, at I.A.  A juristic entity's domicile is the principal place of business, i.e., headquarters, where a juristic entity applicant's senior executives or officers ordinarily direct and control the entity's activities.   37 C.F.R. §2.2(o); Examination Guide 4-19, at I.A.  An applicant whose domicile is located outside of the United States or its territories is foreign-domiciled and must be represented at the USPTO by a U.S.-licensed attorney qualified to practice before the USPTO under 37 C.F.R. §11.14.  37 C.F.R. §2.11(a).

The application record lists two addresses: 34 Canal Street, New York, NY 10002, and 116 Arkansas Drive, Valley Stream, NY 11580. The applicant cannot have two domiciles. If the owner of the mark is Adil Palwala, the applicant's address should be the place the individual person resides and intends to be the person's principal home. If Holy Cow Eat LLC is the owner of the mark, the domicile address should be the principal place of business, i.e., headquarters, where a juristic entity applicant's senior executives or officers ordinarily direct and control the entity's activities.  *See* 37 C.F.R. §§2.2(o)-(p), 2.189; Examination Guide 4-19, at I.A.3.  Thus, applicant must clarify which address is its domicile street address.  *See* 37 C.F.R. §2.189.

**To provide documentation supporting applicant's domicile.**   Open the correct TEAS response form and enter the serial number, answer "yes" to wizard question #3, and on the "Additional Statement(s)" page, below the "Miscellaneous Statement" field, click the button below the text box to attach documentation to support the address.

**To provide applicant's domicile street address.**   After opening the correct TEAS response form and entering the serial number, answer "yes" to wizard question #5, and provide applicant's street address on the "Owner Information" page.   Information provided in the TEAS response form will be publicly viewable.

*If applicant wants to hide its domicile address from public view* because of privacy or other concerns, applicant must have a mailing address that can be made public and differs from its domicile address.  In this case, applicant must follow the steps below in the correct order to ensure the domicile address will be hidden:

(1)     First submit a TEAS Change Address or Representation (CAR) form.  Open the form, enter the serial number, click "Continue," and
     (a)     Use the radio buttons to select "Attorney" for the role of the person submitting the form;
     (b)     Answer "Yes" to the wizard question asking, "Do you want to UPDATE the mailing address, email address, phone or fax number(s) for the trademark owner/holder?" and click "Continue;"
     (c)     On the "Owner Information" page, if the previously provided mailing address has changed, applicant must enter its new mailing address in the "Mailing Address" field, which will be publicly viewable;
     (d)     On the "Owner Information" page, uncheck the box next to "Domicile Address" and enter the new domicile address in the text box immediately below the checkbox.
(2)     Then submit a TEAS response form to indicate the domicile address has been changed.  Open the form and
     (a)     Answer "yes" to wizard question #3 and click "Continue;"
     (b)     Click on the "Miscellaneous Statement" box on the "Additional Statement(s)" page, and enter a statement in the text box immediately below the checkbox that the domicile address was previously changed in the CAR form.

Exhibit 11

AMENDED MARK DESCRIPTION AND COLOR CLAIM REQUIREMENT

Applicant must clarify the colors that are being claimed as a feature of the mark. *See* 37 C.F.R. §§2.37, 2.52(b)(1), 2.61(b); TMEP §§807.07(a) *et seq*. The drawing shows the mark in the color orange on a white background; however, the following colors appear in the color claim: orange and black. Applicant must also clarify whether white is claimed as a feature of the mark.

Where the color claim and/or description of the mark and drawing are inconsistent with one another, generally the USPTO looks to the drawing to determine what the mark is. TMEP §807.07(a)(i)-(a)(ii), (c). Additionally, the colors in the drawing, color claim, and description must match. *See* 37 C.F.R. §2.52(b)(1); TMEP §§807.07 *et seq*.

Also, applicant must submit an amended description of the mark because the current one is incomplete and does not describe all the significant aspects of the mark. 37 C.F.R. §2.37; *see* TMEP §§808.01, 808.02. Descriptions must be accurate and identify all the literal and design elements in the mark. *See* 37 C.F.R. §2.37; TMEP §§808 *et seq*. Here, applicant did not describe the design in the mark.

To clarify the colors in the mark, applicant may satisfy one of the following:

(1) Submit a new color drawing that shows the mark in the colors specified in the color claim and description. TMEP §807.07(c). However, any other amendments to the drawing will not be accepted if they would materially alter the mark. 37 C.F.R. §2.72; *see* TMEP §§807.07(c), 807.14 *et seq*.

(2) Submit an amended color claim and description that matches the colors in the drawing. Generic color names must be used to describe the colors in the mark, e.g., red, yellow, blue. TMEP §807.07(a)(i)-(ii). If black, white, and/or gray represent background, outlining, shading, and/or transparent areas and are not part of the mark, applicant must so specify in the description. *See* TMEP §807.07(d).

The following color claim and description are suggested:

**Color claim:** The color orange is claimed as a feature of the mark."

**Mark Description:** The mark consists of the orange outline of a cow head with an orange halo above the orange wording "HOLY COW". The white area in the cow's head and halo represents transparent background area and is not claimed as a feature of the mark.

For more information about drawings and instructions on how to submit a new color drawing, amended color claim and/or description online using the Trademark Electronic Application System (TEAS) form, see the Drawing webpage.

RESPONSE GUIDELINES

**Response guidelines**. For this application to proceed, applicant must explicitly address each refusal and/or requirement in this Office action. For a refusal, applicant may provide written arguments and evidence against the refusal, and may have other response options if specified above. For a requirement, applicant should set forth the changes or statements. Please see "Responding to Office Actions" and the informational video "Response to Office Action" for more information and tips on responding.

Please call or email the assigned trademark examining attorney with questions about this Office action. Although an examining attorney cannot provide legal advice, the examining attorney can provide additional explanation about the refusal(s) and/or requirement(s) in this Office action. *See* TMEP §§705.02, 709.06.

The USPTO does not accept emails as responses to Office actions; however, emails can be used for informal communications and are included in the application record. *See* 37 C.F.R. §§2.62(c), 2.191; TMEP §§304.01-.02, 709.04-.05.

**How to respond.   Click to file a response to this nonfinal Office action.**

/Marynelle W. Wilson/
Marynelle W. Wilson
Examining Attorney
Law Office 113
Phone: 571-272-7978
Email: marynelle.wilson@uspto.gov

Exhibit 11

**RESPONSE GUIDANCE**

- **Missing the response deadline to this letter will cause the application to abandon.**  A response or notice of appeal must be received by the USPTO before midnight **Eastern Time** of the last day of the response period. TEAS and ESTTA maintenance or unforeseen circumstances could affect an applicant's ability to timely respond.

- **Responses signed by an unauthorized party** are not accepted and can **cause the application to abandon.**  If applicant does not have an attorney, the response must be signed by the individual applicant, all joint applicants, or someone with legal authority to bind a juristic applicant.  If applicant has an attorney, the response must be signed by the attorney.

- If needed, **find contact information for the supervisor** of the office or unit listed in the signature block.

---

[1] U.S. Registration No. 2216797 lists "bar and restaurant services" in International Class 42. These services were transferred to International Class 43 due to the restructuring of Class 42 that was implemented in the 8th edition of the Nice Agreement.

Exhibit 11

Print: Oct 28, 2020                                              74635012

**TYPED DRAWING**

**Serial Number**
74635012

**Status**
REGISTERED AND RENEWED

**Word Mark**
HOLY COW!

**Standard Character Mark**
No

**Registration Number**
2216797

**Date Registered**
1999/01/12

**Type of Mark**
SERVICE MARK

**Register**
PRINCIPAL

**Concurrency**
CONCURRENT USE

**Mark Drawing Code**
(1) TYPED DRAWING

**Owner**
Harry Caray, Ltd. CORPORATION ILLINOIS 130 E. Randolph St., Ste. 3900 Chicago ILLINOIS 60601

**Goods/Services**
Class Status -- ACTIVE. IC 042. US 100 101. G & S: bar and restaurant services. First Use: 1987/10/21. First Use In Commerce: 1987/10/21.

**Concurrent Use Statement**
Registration is limited to the area consisting of the states of Alabama, Arkansas, Connecticut, Delaware, Florida, Georgia, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Nebraska, New Hampshire, New Jersey, New York, North Carolina, North Dakota, Ohio, Oklahoma, Pennsylvania, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Vermont, Virginia, West Virginia, and Wisconsin. Concurrent use proceeding No. 1086 with Serial No. 74/350,870.

Exhibit 11

**Print: Oct 28, 2020**                     74635012

**Filing Date**
1995/02/09

**Examining Attorney**
SUSSMAN, RONALD R.

**Attorney of Record**
Charles T. Riggs Jr.

Exhibit 11

Print: Oct 28, 2020                          78717553

## DESIGN MARK

**Serial Number**
78717553

**Status**
REGISTERED AND RENEWED

**Word Mark**
HOLY COW!

**Standard Character Mark**
Yes

**Registration Number**
3141729

**Date Registered**
2006/09/12

**Type of Mark**
SERVICE MARK

**Register**
PRINCIPAL

**Mark Drawing Code**
(4) STANDARD CHARACTER MARK

**Owner**
Harry Caray, Ltd. CORPORATION ILLINOIS 17th Floor 333 West Wacker Drive Chicago ILLINOIS 60606

**Goods/Services**
Class Status -- ACTIVE.  IC 043.  US  100 101.  G & S: Restaurant and bar services.  First Use: 1987/10/21.  First Use In Commerce: 1987/10/21.

**Prior Registration(s)**
2216797

**Filing Date**
2005/09/21

**Examining Attorney**
LEVINE, HOWARD B.

**Attorney of Record**
Charles T. Riggs Jr.

-1-

Exhibit 11

# HOLY COW!

Exhibit 11

Print: Oct 28, 2020                                    88403075

**DESIGN MARK**

**Serial Number**
88403075

**Status**
EX PARTE APPEAL PENDING

**Word Mark**
THE HOLY COW BURGERS & ICE CREAM

**Standard Character Mark**
No

**Type of Mark**
SERVICE MARK

**Register**
PRINCIPAL

**Mark Drawing Code**
(3) DESIGN PLUS WORDS, LETTERS AND/OR NUMBERS

**Owner**
Fast Casual Concepts Inc DBA The Holy Cow Burgers and Ice Cream
CORPORATION PENNSYLVANIA 141 Amsterdam Rd Grove City PENNSYLVANIA
16127

**Goods/Services**
Class Status -- ACTIVE.  IC 043.  US  100 101.  G & S: Restaurant
services.  First Use: 2019/04/18.  First Use In Commerce: 2019/04/18.

**Disclaimer Statement**
NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "BURGERS & ICE CREAM"
APART FROM THE MARK AS SHOWN.

**Description of Mark**
The mark consists of a black shaded horizontally oriented diamond with
rounded corners; set within the diamond design is a single gray line
inlay that conforms to the shape of the large diamond design; set
within the center of the diamond design is a shaded gray cow head with
a yellow halo design on the right horn of the cow head; above the cow
head design is the wording "THE" in stylized form and red color;
superimposed on the cow head design is the wording "HOLY COW BURGERS &
ICE CREAM" in stylized form in white color with gray and black
accents; on the left and right side of the "HOLY COW" wording and cow
head design are two horizontal shaded gray diamonds.

**Colors Claimed**
The color(s) red, gray, black, white, and yellow is/are claimed as a
feature of the mark.

Exhibit 11

**Print: Oct 28, 2020**                                **88403075**

**Filing Date**
2019/04/25

**Examining Attorney**
SCLEIDOROVICH, JOANNA

**Attorney of Record**
JOSHUA A SCHAUL

Exhibit 11



Exhibit 11

| | |
|---|---|
| **To:** | ADIL PALWALA (zawanilaw@gmail.com) |
| **Subject:** | U.S. Trademark Application Serial No. 90050503 - HOLY COW - 4018032 |
| **Sent:** | October 29, 2020 05:57:35 PM |
| **Sent As:** | ecom113@uspto.gov |
| **Attachments:** | |

**United States Patent and Trademark Office (USPTO)**

**USPTO OFFICIAL NOTICE**

Office Action (Official Letter) has issued
on **October 29, 2020** for
**U.S. Trademark Application Serial No. 90050503**

Your trademark application has been reviewed by a trademark examining attorney. As part of that review, the assigned attorney has issued an official letter that you must respond to by the specified deadline or your application will be abandoned. Please follow the steps below.

**(1)  Read the official letter.**

**(2)  Direct questions** about the contents of the Office action to the assigned attorney below.

/Marynelle W. Wilson/
Marynelle W. Wilson
Examining Attorney
Law Office 113
Phone: 571-272-7978
Email: marynelle.wilson@uspto.gov

Direct questions about navigating USPTO electronic forms, the USPTO website, the application process, the status of your application, and/or whether there are outstanding deadlines or documents related to your file to the Trademark Assistance Center (TAC).

**(3)  Respond within 6 months** (or earlier, if required in the Office action) from **October 29, 2020**, using the Trademark Electronic Application System (TEAS). The response must be received by the USPTO before midnight **Eastern Time** of the last day of the response period. See the Office action for more information about how to respond

## GENERAL GUIDANCE

- **Check the status of your application periodically** in the Trademark Status & Document Retrieval (TSDR) database to avoid missing critical deadlines.

- **Update your correspondence email address**, if needed, to ensure you receive important USPTO notices about your application.

- **Beware of misleading notices sent by private companies about your application.** Private companies not associated with the USPTO use public information available in trademark registrations to mail and email trademark-related offers and notices – most of which require fees. All **official USPTO correspondence** will only be **emailed from the domain "@uspto.gov."**

Exhibit 11