| | |
|---|---|
| **To:** | HOLY COW RESTUARANT INC(ipr.holycow@gmail.com) |
| **Subject:** | U.S. Trademark Application Serial No. 98006584 - HOLY HALAL COW |
| **Sent:** | February 20, 2024 06:05:09 PM EST |
| **Sent As:** | tmng.notices@uspto.gov |

**Attachments**

2216797
3141729
Merriam-Webster - holy cow.jpg
7237544
7300150
6118411
6180965
5872542
7001685
3872057
5426790
6436974
6559985
American Heritage - cow.jpg
American Heritage - halal.jpg
Merriam-Webster - cow.jpg
Merriam-Webster - halal.jpg
Shepherds Touch Farm - halal cow.jpg

## United States Patent and Trademark Office (USPTO)
### Office Action (Official Letter) About Applicant's Trademark Application

**U.S. Application Serial No.** 98006584

**Mark:** HOLY HALAL COW

**Correspondence Address:**
HOLY COW RESTUARANT INC
15 W 29TH ST
NEW YORK NY 10001
UNITED STATES

**Applicant:** HOLY COW RESTUARANT INC

**Reference/Docket No.** N/A

**Correspondence Email Address:** ipr.holycow@gmail.com

# NONFINAL OFFICE ACTION

Exhibit 13

**Response deadline.** File a response to this nonfinal Office action within three months of the "Issue date" below to avoid abandonment of the application. Review the Office action and respond using one of the links to the appropriate electronic forms in the "How to respond" section below.

**Request an extension.** For a fee, applicant may request one three-month extension of the response deadline prior to filing a response. The request must be filed within three months of the "Issue date" below. If the extension request is granted, the USPTO must receive applicant's response to this letter within six months of the "Issue date" to avoid abandonment of the application.

**Issue date:** February 20, 2024

## Introduction

The referenced application has been reviewed by the assigned trademark examining attorney. Applicant must respond timely and completely to the issue(s) below. 15 U.S.C. §1062(b); 37 C.F.R. §§2.62(a), 2.65(a); TMEP §§711, 718.03.

## Summary of Issues

- Section 2(d) - Likelihood of Confusion Refusals
- Specimen Refusal
- Disclaimer of Descriptive Wording Required
- Advisory regarding Hiring a Trademark Attorney

## Section 2(d) - Likelihood of Confusion Refusals

Registration of the applied-for mark is refused because of a likelihood of confusion with the marks in U.S. Registration Nos. 2216797 and 3141729. Trademark Act Section 2(d), 15 U.S.C. §1052(d); *see* TMEP §§1207.01 *et seq.* See the attached registrations.

Trademark Act Section 2(d) bars registration of an applied-for mark that is so similar to a registered mark that it is likely consumers would be confused, mistaken, or deceived as to the commercial source of the goods and/or services of the parties. *See* 15 U.S.C. §1052(d). Likelihood of confusion is determined on a case-by-case basis by applying the factors set forth in *In re E. I. du Pont de Nemours & Co.*, 476 F.2d 1357, 1361, 177 USPQ 563, 567 (C.C.P.A. 1973) (called the "*du Pont* factors"). *In re i.am.symbolic, llc*, 866 F.3d 1315, 1322, 123 USPQ2d 1744, 1747 (Fed. Cir. 2017). Any evidence of record related to those factors need be considered; however, "not all of the *DuPont* factors are relevant or of similar weight in every case." *In re Guild Mortg. Co.*, 912 F.3d 1376, 1379, 129 USPQ2d 1160, 1162 (Fed. Cir. 2019) (quoting *In re Dixie Rests., Inc.*, 105 F.3d 1405, 1406, 41 USPQ2d 1531, 1533 (Fed. Cir. 1997)).

Although not all *du Pont* factors may be relevant, there are generally two key considerations in any likelihood of confusion analysis: (1) the similarities between the compared marks and (2) the relatedness of the compared goods and/or services. *See In re i.am.symbolic, llc*, 866 F.3d at 1322, 123 USPQ2d at 1747 (quoting *Herbko Int'l, Inc. v. Kappa Books, Inc.*, 308 F.3d 1156, 1164-65, 64 USPQ2d 1375, 1380 (Fed. Cir. 2002)); *Federated Foods, Inc. v. Fort Howard Paper Co.*, 544 F.2d 1098, 1103, 192 USPQ 24, 29 (C.C.P.A. 1976) ("The fundamental inquiry mandated by [Section] 2(d) goes to the cumulative effect of differences in the essential characteristics of the goods [or services] and differences in the marks."); TMEP §1207.01.

Exhibit 13

Applicant has applied to register the mark HOLY HALAL COW in standard characters for "Restaurant and catering services" in International Class 43.

Registrant's mark is HOLY COW! in standard characters for "bar and restaurant services" in International Class 43.

Registrant's mark is HOLY COW! in standard characters for "Restaurant and bar services" in International Class 43.

The above marks are owned by the same registrant.

<u>Similarity of the Marks</u>

Marks are compared in their entireties for similarities in appearance, sound, connotation, and commercial impression. *Stone Lion Capital Partners, LP v. Lion Capital LLP*, 746 F.3d 1317, 1321, 110 USPQ2d 1157, 1160 (Fed. Cir. 2014) (quoting *Palm Bay Imps., Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772*, 396 F.3d 1369, 1371, 73 USPQ2d 1689, 1691 (Fed. Cir. 2005)); TMEP §1207.01(b)-(b)(v). "Similarity in any one of these elements may be sufficient to find the marks confusingly similar." *In re Inn at St. John's, LLC*, 126 USPQ2d 1742, 1746 (TTAB 2018) (citing *In re Davia*, 110 USPQ2d 1810, 1812 (TTAB 2014)), *aff'd per curiam*, 777 F. App'x 516, 2019 BL 343921 (Fed. Cir. 2019); TMEP §1207.01(b).

Here, applicant's mark, HOLY HALAL COW, in standard characters, is confusingly similar to the registered marks, HOLY COW!, in standard characters, because the marks are similar in appearance and commercial impression.

Marks may be confusingly similar in appearance where similar terms or phrases or similar parts of terms or phrases appear in the compared marks and create a similar overall commercial impression. *See Crocker Nat'l Bank v. Canadian Imperial Bank of Commerce*, 228 USPQ 689, 690-91 (TTAB 1986), *aff'd sub nom. Canadian Imperial Bank of Commerce v. Wells Fargo Bank, Nat'l Ass'n*, 811 F.2d 1490, 1495, 1 USPQ2d 1813, 1817 (Fed. Cir. 1987) (holding COMMCASH and COMMUNICASH confusingly similar); *In re Corning Glass Works*, 229 USPQ 65, 66 (TTAB 1985) (holding CONFIRM and CONFIRMCELLS confusingly similar); *In re Pellerin Milnor Corp.*, 221 USPQ 558, 560 (TTAB 1983) (holding MILTRON and MILLTRONICS confusingly similar); TMEP §1207.01(b)(ii)-(iii).

Here, the applied-for HOLY HALAL COW and registered HOLY COW! share the identical wording "HOLY" and "COW", giving the marks a similar appearance. Although applicant inserts the term "HALAL" in the middle of "HOLY" and "COW", this wording merely narrows the impression of the type of holy "COW" of registered mark to that of an Islamic one, and is descriptive for the type of food provided at applicant's restaurant. Thus, this wording does not significantly alter the impression from that of registrant's HOLY COW!, an interjection phrase that indicates surprise. *See* attached evidence from *Merriam-Webster*. The marks thus create a similar impression of an interjection of surprise.

Additionally, punctuation is generally not sufficient to alter the connotation and overall commercial impression of otherwise confusingly similar marks and, as such, is not sufficient to distinguish marks. *See, e.g.*, *In re St. Helena Hosp.*, 774 F.3d 747, 750-51, 113 USPQ2d 1082, 1084-85 (Fed. Cir. 2014) (finding punctuation in registrant's mark, TAKE 10!, did not alter the pronunciation or distinguish it in any significant way from applicant's mark, TAKETEN); *Mini Melts, Inc. v. Reckitt Benckiser LLC*, 118

Exhibit 13

USPQ2d 1464, 1470 (TTAB 2016) (finding "the hyphen in [a]pplicant's mark MINI-MELTS [did] not distinguish it from [o]pposer's mark [MINI MELTS]"); *Mag Instrument Inc. v. Brinkmann Corp.*, 96 USPQ2d 1701, 1712 (TTAB 2010) (citing *Goodyear Tire & Rubber Co. v. Dayco Corp.*, 201 USPQ 485, 488 n.1 (TTAB 1978)) (finding hyphen did not distinguish opposer's mark, MAG-NUM STAR, from applicant's mark, MAGNUM MAXFIRE).

In the present case, registrant's exclamation point in HOLY COW! is not significant in forming the commercial impression of the mark, and thus the applied-for mark's lack of this punctuation is not a distinguishing factor.

Finally, where the goods and/or services of an applicant and registrant are "similar in kind and/or closely related," the degree of similarity between the marks required to support a finding of likelihood of confusion is not as great as in the case of diverse goods and/or services. *In re J.M. Originals Inc.*, 6 USPQ2d 1393, 1394 (TTAB 1987); *see Shen Mfg. Co. v. Ritz Hotel Ltd.*, 393 F.3d 1238, 1242, 73 USPQ2d 1350, 1354 (Fed. Cir. 2004); TMEP §1207.01(b).

Here, applicant's "Restaurant and catering services" are closely related to registrant's "Restaurant and bar services," and "bar and restaurant services," and thus the degree of similarity between the marks required to support finding a likelihood of confusion is not as great. *See* discussion below.

Because the marks look similar and create a similar commercial impression, the marks are considered similar for likelihood of confusion purposes.

<u>Relatedness of the Services</u>

The goods and/or services are compared to determine whether they are similar, commercially related, or travel in the same trade channels. *See Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1369-71, 101 USPQ2d 1713, 1722-23 (Fed. Cir. 2012); *Herbko Int'l, Inc. v. Kappa Books, Inc.*, 308 F.3d 1156, 1165, 64 USPQ2d 1375, 1381 (Fed. Cir. 2002); TMEP §§1207.01, 1207.01(a)(vi).

The compared goods and/or services need not be identical or even competitive to find a likelihood of confusion. *See On-line Careline Inc. v. Am. Online Inc.*, 229 F.3d 1080, 1086, 56 USPQ2d 1471, 1475 (Fed. Cir. 2000); *Recot, Inc. v. Becton*, 214 F.3d 1322, 1329, 54 USPQ2d 1894, 1898 (Fed. Cir. 2000); TMEP §1207.01(a)(i). They need only be "related in some manner and/or if the circumstances surrounding their marketing are such that they could give rise to the mistaken belief that [the goods and/or services] emanate from the same source." *Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1369, 101 USPQ2d 1713, 1722 (Fed. Cir. 2012) (quoting *7-Eleven Inc. v. Wechsler*, 83 USPQ2d 1715, 1724 (TTAB 2007)); TMEP §1207.01(a)(i); *see Made in Nature, LLC v. Pharmavite LLC*, 2022 USPQ2d 557, at *44 (TTAB 2022) (quoting *In re Jump Designs LLC*, 80 USPQ2d 1370, 1374 (TTAB 2006)).

Here, applicant's services, "Restaurant and catering services," are closely related to registrant's services, "bar and restaurant services," and"Restaurant and bar services."

The trademark examining attorney has attached evidence from the USPTO's XSearch database consisting of a number of third-party marks registered for use in connection with the same or similar services as those of both applicant and registrant in this case. This evidence shows that the goods and/or services listed therein, namely restaurant and café services, restaurant and catering services, and restaurant and bar services, are of a kind that may emanate from a single source under a single mark.

Exhibit 13

*See In re I-Coat Co.*, 126 USPQ2d 1730, 1737 (TTAB 2018) (citing *In re Infinity Broad. Corp.*, 60 USPQ2d 1214, 1217-18 (TTAB 2001); *In re Albert Trostel & Sons Co.*, 29 USPQ2d 1783, 1785-86 (TTAB 1993); *In re Mucky Duck Mustard Co.*, 6 USPQ2d 1467, 1470 n.6 (TTAB 1988)); TMEP §1207.01(d)(iii).

Accordingly, the services are considered related for purposes of the likelihood of confusion analysis.

<u>Conclusion</u>

Because the marks are similar and the services are related, there is a likelihood of confusion as to the source of applicant's services, and registration is refused pursuant to Section 2(d) of the Trademark Act.

Although applicant's mark has been refused registration, applicant may respond to the refusal(s) by submitting evidence and arguments in support of registration. However, if applicant responds to the refusal(s), applicant must also respond to the requirement(s) set forth below.

**Specimen Refusal**

**Digitally created or altered image or mockup is not an acceptable specimen.** Registration is refused because the specimen appears to consist of a digitally created or altered image or a mockup of a depiction of the mark on business signage and a digital version of a menu and does not show the applied-for mark as actually used in commerce in International Class 43. Trademark Act Sections 1 and 45, 15 U.S.C. §§1051, 1127; 37 C.F.R. §§2.34(a)(1)(iv), 2.56(a), (c); TMEP §§904.04(a)(iii), 904.07(a), 1301.04(a), (g)(i).

An application based on Trademark Act Section 1(a) must include a specimen showing the applied-for mark as actually used in commerce for each international class of services identified in the application or amendment to allege use. 15 U.S.C. §1051(a)(1); 37 C.F.R. §§2.34(a)(1)(iv), 2.56(a); TMEP §§904, 904.07(a); 1301.01 *et seq*. "Use in commerce" means (1) a bona fide use of the applied-for mark in the ordinary course of trade (and not merely to reserve a right in the mark), (2) the mark is used in the sale, advertising, or rendering of the services, and (3) the services are actually rendered in commerce. *See* 15 U.S.C. §1127.

An image of business signage, such as on a storefront or delivery van, or a webpage that has been digitally created or altered to include the mark, or a mockup of how the mark may be displayed, is not a proper specimen for services because it does not show actual use of the mark in commerce. *See* TMEP §§904.04(a)(i), 1301.04(a). Similarly, a website showing the mark for the services that applicant is not currently engaged in selling, advertising, or rendering is not a proper specimen. *See* 15 U.S.C. §1127; 37 C.F.R. §2.56(c); TMEP §§904.07(a), 1301.04(g)(i).

In this case, the menu specimen appears to be a digital file, or screenshot of a webpage without a URL and date, and the business signage shows signs of the wording "HOLY HALAL COW" being digitally inserted onto an image. The wording "HOLY HALAL COW", unlike the cow head image to the left, does not conform to the awning and appears to be perfectly white over what should be a shadowed spot, indicating that this wording was inserted into a preexisting picture. Further, this image is identical in every way, including shadows, except for the wording "HOLY HALAL COW" to the specimen used in applicant's other pending application for HOLY BURGERS COW. Therefore, the specimen does not

Exhibit 13

show actual use of the mark in commerce.

**Response options.** Applicant may respond to the specimen refusal by satisfying **one** of the following options for each applicable international class:

> (1) **Submit a different specimen** (a verified "substitute" specimen) that (a) was in actual use in commerce at least as early as the filing date of the application or prior to the filing of an amendment to allege use and (b) shows the mark in actual use in commerce for the services identified in the application or amendment to allege use. A "verified substitute specimen" is a specimen that is accompanied by the following statement made in a signed affidavit or supported by a declaration under 37 C.F.R. §2.20: "The substitute (or new, or originally submitted, if appropriate) specimen(s) was/were in use in commerce at least as early as the filing date of the application or prior to the filing of the amendment to allege use." The substitute specimen cannot be accepted without this statement. For instructions on how to submit a different specimen using the online Trademark Electronic Application System (TEAS) form, see the Specimen webpage.

> Applicants submitting a webpage as a specimen for services must include the URL and the date the page was accessed or printed either directly on the specimen itself or in a separate statement, supported by an affidavit or declaration under 37 C.F.R. §2.20 verifying such information. *See* 37 C.F.R. §2.56(c); TMEP §§904.03(i), 1301.04(a).

> (2) **Amend the filing basis** to intent to use under Section 1(b) (which includes withdrawing an amendment to allege use, if one was filed), as no specimen is required before publication. This option will later necessitate additional fee(s) and filing requirements, including a specimen.

If applicant submits an acceptable verified substitute specimen or amends to Section 1(b), the requirement below for additional information/documentation about the original specimen will be withdrawn. The requirement below as to the original specimen will be made final if applicant submits a substitute specimen that is not acceptable or does not amend to Section 1(b), and does not also respond completely to the requirement below.

**Additional information/documentation about original specimen(s) required.** To permit proper examination of the application record for compliance with use in commerce requirements, applicant must respond to the following requirement for information and documentation about the specimen(s). *See* 37 C.F.R. §2.61(b); TMEP §§814, 904.04(a)(iii). A specimen must show the mark as actually used in commerce, which means use in the ordinary course of trade, and not merely to reserve a right in the trademark. 15 U.S.C. §§1051, 1052, 1127. Because the specimen of record appears to be digitally created or altered, or is a mockup, further information is necessary to determine whether the specimen is in actual use in commerce.

**Answer for each specimen/photograph/image previously provided.** For any website source, applicant must provide (1) an image of the webpage, (2) the date it was accessed or printed, and (3) the complete URL address. *In re ADCO Indus.-Techs., L.P.*, 2020 USPQ2d 53786, at *2 (TTAB 2020) (citing *In re I-Coat Co.*, 126 USPQ2d 1730, 1733 (TTAB 2018)); TMEP §710.01(b). Providing only a website address or hyperlink to the webpage is not sufficient to make the materials of record. *In re ADCO Indus.-Techs., L.P.*, 2020 USPQ2d 53786, at *2 (citing *In re Olin Corp.*, 124 USPQ2d 1327, 1331 n.15 (TTAB 2017); *In re HSB Solomon Assocs., LLC*, 102 USPQ2d 1269, 1274 (TTAB 2012);

Exhibit 13

TBMP §1208.03); TMEP §814.

> (1)     Identify the particular service(s) listed in the application for which the specimen(s) was submitted to show use of the mark.

> (2)     Explain whether the specimen was created for submission with this application. If so, specify the date each specimen was created. If applicant obtained the content of the webpage or image(s) of the mark in connection with the services shown in the specimen(s) from a third-party website, provide the URL of the website and a digital copy of relevant webpage(s) for each image.

> (3)     Provide information about how applicant advertises the services and representative examples from online or print sources showing how the mark appears in applicant's advertising of the services. Provide the name of the online or print source and a complete copy of the webpage(s) or print page(s) showing the services advertised for sale. For each source, specify when the services were first advertised for sale and if the services are still advertised for sale in that environment.

> (4)     For the services identified in response to question (1), specify the date the services were first rendered or provided to or within the United States, and provide documentation that shows payment or other consideration made for the services, redacting personal or private information of buyers as necessary.

Applicant has a duty to respond directly and completely to this requirement for information. *See In re Ocean Tech., Inc.*, 2019 USPQ2d 450686, at *2 (TTAB 2019) (citing *In re AOP LLC*, 107 USPQ2d 1644, 1651 (TTAB 2013)); TMEP §814. Failure to comply with a requirement for information is an independent ground for refusing registration. *In re SICPA Holding SA*, 2021 USPQ2d 613, at *6 (TTAB 2021) (citing *In re Cheezwhse.com, Inc.*, 85 USPQ2d 1917, 1919 (TTAB 2008); *In re DTI P'ship LLP*, 67 USPQ2d 1699, 1701-02 (TTAB 2003); TMEP §814).

## **Disclaimer of Descriptive Wording Required**

Applicant must disclaim the wording "HALAL COW" because it is merely descriptive of an ingredient, quality, characteristic, function, feature, purpose, or use of applicant's goods and/or services.  *See* 15 U.S.C. §§1052(e)(1), 1056(a); *DuoProSS Meditech Corp. v. Inviro Med. Devices, Ltd.*, 695 F.3d 1247, 1251, 103 USPQ2d 1753, 1755 (Fed. Cir. 2012); TMEP §§1213, 1213.03(a).

The attached evidence from *American Heritage*, *Merriam-Webster*, and *Shepherd's Touch Farm* shows the wording "HALAL" means something permitted by Islamic law, "COW" is a domestic bovine, and that third parties use this language to describe bovine meat permitted by Islamic law.  Thus, the wording merely describes applicant's services because applicant provides restaurant services serving the meat of cows that is permitted in Islamic law.

Applicant may respond to this issue by submitting a disclaimer in the following format:

> **No claim is made to the exclusive right to use "HALAL COW" apart from the mark as shown.**

For an overview of disclaimers and instructions on how to provide one using the Trademark Electronic

Exhibit 13

Application System (TEAS), see the Disclaimer webpage.

**Response Guidelines**

For this application to proceed, applicant must explicitly address each refusal and/or requirement in this Office action.  For a refusal, applicant may provide written arguments and evidence against the refusal, and may have other response options if specified above.  For a requirement, applicant should set forth the changes or statements.  Please see "Responding to Office Actions" and the informational video "Response to Office Action" for more information and tips on responding.

Please call or email the assigned trademark examining attorney with questions about this Office action.  Although an examining attorney cannot provide legal advice, the examining attorney can provide additional explanation about the refusal(s) and/or requirement(s) in this Office action.  *See* TMEP §§705.02, 709.06.

The USPTO does not accept emails as responses to Office actions; however, emails can be used for informal communications and are included in the application record.  *See* 37 C.F.R. §§2.62(c), 2.191; TMEP §§304.01-.02, 709.04-.05.

**Advisory regarding Hiring a Trademark Attorney**

Because of the legal technicalities and strict deadlines of the trademark application process, applicant is encouraged to hire a private attorney who specializes in trademark matters to assist in this process. The assigned trademark examining attorney can provide only limited assistance explaining the content of an Office action and the application process. USPTO staff cannot provide legal advice or statements about an applicant's legal rights. TMEP §§705.02, 709.06. See Hiring a U.S.-licensed trademark attorney for more information.

**How to respond.**  File a **response form to this nonfinal Office action** or file a **request form for an extension of time to file a response**.


/Mackenzie Olson/
Mackenzie Olson
Trademark Examining Attorney
Law Office 112
(571) 270-1281
Mackenzie.Olson@uspto.gov


# RESPONSE GUIDANCE

- **Missing the deadline for responding to this letter will cause the application to abandon.**  A response or extension request must be received by the USPTO before 11:59 p.m. **Eastern Time** of the last day of the response deadline. Trademark Electronic Application System (TEAS) system availability could affect an applicant's ability to timely respond. For help resolving technical issues with TEAS, email TEAS@uspto.gov.

Exhibit 13

- **Responses signed by an unauthorized party** are not accepted and can **cause the application to abandon.** If applicant does not have an attorney, the response must be signed by the individual applicant, all joint applicants, or someone with legal authority to bind a juristic applicant. If applicant has an attorney, the response must be signed by the attorney.

- If needed, **find contact information for the supervisor** of the office or unit listed in the signature block.

Exhibit 13

2216797

# HOLY COW!

| | |
|---|---|
| **Word Mark** | HOLY COW! |
| **Goods/Services** | IC 042 US 100 101<br>bar and restaurant services. |
| **Register** | PRINCIPAL |
| **Serial Number** | 74635012 |
| **Filing Date** | 1995-02-09T00:00:00 |
| **Original Filing Basis** | 1a |
| **Current Filing Basis** | 1a |
| **Publication Date** | 1997-09-16 |
| **Registration Number** | 2216797 |
| **Date Registered** | 1999-01-12 |
| **Owner** | (REGISTRANT) Harry Caray, Ltd. (CORPORATION; ILLINOIS, USA); 130 E. Randolph St., Ste. 3900, Chicago, ILLINOIS 60601, UNITED STATES |
| **Type of Mark** | SERVICE MARK |
| **Mark Drawing Code** | (1) TYPED DRAWING |
| **Other Data** | Registration is limited to the area consisting of the states of Alabama, Arkansas, Connecticut, Delaware, Florida, Georgia, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Nebraska, New Hampshire, New Jersey, New York, North Carolina, North Dakota, Ohio, Oklahoma, Pennsylvania, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Vermont, Virginia, West Virginia, and Wisconsin. Concurrent use proceeding No. 1086 with Serial No. 74/350,870. |
| **Live Dead Indicator** | LIVE |

Exhibit 13

**Status**                     REGISTERED AND RENEWED

**Attorney of Record**         Charles T. Riggs Jr.


**Print:** February 20, 2024 5:11 PM

Exhibit 13

**3141729**

# HOLY COW!

| | |
|---|---|
| **Word Mark** | HOLY COW! |
| **Goods/Services** | IC 043 US 100 101<br>Restaurant and bar services. |
| **Register** | PRINCIPAL |
| **Serial Number** | 78717553 |
| **Filing Date** | 2005-09-21T00:00:00 |
| **Original Filing Basis** | 1a |
| **Current Filing Basis** | 1a |
| **Publication Date** | 2006-06-20 |
| **Registration Number** | 3141729 |
| **Date Registered** | 2006-09-12 |
| **Owner** | (REGISTRANT) Harry Caray, Ltd. (CORPORATION; ILLINOIS, USA); 17th Floor, 333 West Wacker Drive, Chicago, ILLINOIS 60606, UNITED STATES |
| **Type of Mark** | SERVICE MARK |
| **Mark Drawing Code** | (4) STANDARD CHARACTER MARK |
| **Live Dead Indicator** | LIVE |
| **Status** | REGISTERED AND RENEWED |
| **Attorney of Record** | Charles T. Riggs Jr. |

**Print:** February 20, 2024 3:39 PM

Exhibit 13



# holy cow idiom

**Informal**

↪ used as an interjection to express surprise or excitement

*Holy cow!* That car almost ran into us!

**Dictionary**
- **Definition**
- Example Sentences
- Related Articles
- Entries Near
- Show More ⌄

Save Word 🔖

## Examples of *holy cow* in a Sentence

**Recent Examples on the Web**

Chased by a fearsome dog catcher, Basil teams-up with a street-wise, Bollywood-obsessed Street Dog forever living off his wits and a feisty *holy cow* with a lot of attitude.
— Naman Ramachandran, *Variety*, 9 Feb. 2024

And then all of a sudden, somebody mentioned like, *holy cow*, it's been 10 years at the Performance Center.
— Joey Hayden, *Dallas News*, 14 July 2023

These examples are programmatically compiled from various online sources to illustrate current usage of the word 'holy cow'. Any opinions expressed in the examples do not represent those of Merriam-Webster or its editors. Send us feedback about these examples.

## Articles Related to *holy cow*

**Interjections from Food Terms**
Hot Dog! (And more!)

Quordle
Can you solve 4 words at once?
Play

WORD OF THE DAY
buttress
See Definitions and Examples »
Get Word of the Day daily email!
Your email address
SUBSCRIBE

Exhibit 13



4:49:04 PM 2/20/2024
https://www.merriam-webster.com/dictionary/holy%20cow

Exhibit 13

7237544

# Bagel Nation

| | |
|---|---|
| **Word Mark** | BAGEL NATION |
| **Goods/Services** | IC 043 US 100 101<br>Restaurant services; Restaurant services featuring sandwiches; Restaurant services, namely, providing of food and beverages for consumption on and off the premises; Restaurant and bar services, including restaurant carryout services; Restaurant and café services; Restaurant and catering services; Delicatessen services; Mobile restaurant services; Take-away restaurant services. |
| **Register** | PRINCIPAL |
| **Serial Number** | 97283140 |
| **Filing Date** | 2022-02-24T00:00:00 |
| **Original Filing Basis** | 1b |
| **Current Filing Basis** | 1a |
| **Publication Date** | 2023-01-24 |
| **Registration Number** | 7237544 |
| **Date Registered** | 2023-12-05 |
| **Owner** | (REGISTRANT) Rick K. Khosla (INDIVIDUAL; USA); 25189 Blackstone Ct., Chantilly, VIRGINIA 20152, UNITED STATES |
| **Type of Mark** | SERVICE MARK |
| **Mark Drawing Code** | (4) STANDARD CHARACTER MARK |
| **Disclaimer** | "BAGEL" |
| **Live Dead Indicator** | LIVE |
| **Status** | REGISTERED |

Exhibit 13

**Attorney of Record**          Jerome M. Kaplan

**Print:** February 20, 2024 5:03 PM

Exhibit 13

**7300150**



| | |
|---|---|
| **Word Mark** | BIG TACO |
| **Goods/Services** | IC 043 US 100 101<br>Restaurant services, including sit-down service of food and take-out restaurant services; Restaurant and bar services, including restaurant carryout services; Restaurant and café services; Restaurant and catering services; Take-out restaurant services. |
| **Register** | PRINCIPAL |
| **Serial Number** | 97048924 |
| **Filing Date** | 2021-09-28T00:00:00 |
| **Original Filing Basis** | 1b |
| **Current Filing Basis** | 1a |
| **Publication Date** | 2022-09-27 |
| **Registration Number** | 7300150 |
| **Date Registered** | 2024-02-06 |
| **Owner** | (REGISTRANT) Big Taco, LLC (LIMITED LIABILITY COMPANY; FLORIDA, USA); 731 Via Lambardy Avenue, Winter Park, FLORIDA 32789, UNITED STATES |
| **Type of Mark** | SERVICE MARK |
| **Mark Drawing Code** | (3) DESIGN PLUS WORDS, LETTERS, AND/OR NUMBERS |
| **Design Code** | 080125 |
| **Description of Mark** | The mark consists of a stylized design of a taco with the words "BIG TACO" on the side of the shell. |
| **Disclaimer** | "BIG TACO" |

Exhibit 13

**Live Dead Indicator**        LIVE

**Status**        REGISTERED

**Attorney of Record**        Debra Hill

**Print:** February 20, 2024 5:03 PM

Exhibit 13

6118411

# Basta Pasta

| | |
|---|---|
| **Word Mark** | BASTA PASTA |
| **Goods/Services** | IC 043 US 100 101<br>Restaurant; Restaurant and bar services; Restaurant and bar services, including restaurant carryout services; Restaurant and café services; Restaurant and catering services; Restaurant services; Restaurant services featuring Italian food and seafood; Restaurant services, including sit-down service of food and take-out restaurant services; Restaurant services, namely, providing of food and beverages for consumption on and off the premises; Restaurant, bar and catering services; Bar and restaurant services; Café and restaurant services; Provision of food and drink in restaurants; Take-out restaurant services. |
| **Register** | PRINCIPAL |
| **Serial Number** | 88767343 |
| **Filing Date** | 2020-01-21T00:00:00 |
| **Original Filing Basis** | 1a |
| **Current Filing Basis** | 1a |
| **Publication Date** | 2020-05-19 |
| **Registration Number** | 6118411 |
| **Date Registered** | 2020-08-04 |
| **Owner** | (REGISTRANT) SPOA, LLC (LIMITED LIABILITY COMPANY; MARYLAND, USA); 2745 Fallston Road, Fallston, MARYLAND 21047, UNITED STATES |
| **Type of Mark** | SERVICE MARK |
| **Mark Drawing Code** | (4) STANDARD CHARACTER MARK |
| **Translation** | The English translation of "BASTA" in the mark is "ENOUGH". |

Exhibit 13

**Disclaimer**             "PASTA"

**Live Dead Indicator**    LIVE

**Status**                 REGISTERED

**Attorney of Record**     Kimberly Bohle

**Print:** February 20, 2024 5:03 PM

Exhibit 13

**6180965**



| | |
|---|---|
| **Word Mark** | BK LOBSTER |
| **Goods/Services** | IC 043 US 100 101<br>Restaurant; Restaurant and bar information services; Restaurant and bar services; Restaurant and café services; Restaurant information services; Restaurant reservation services; Restaurant services; Restaurant services, namely, providing of food and beverages for consumption on and off the premises; Restaurant, bar and catering services; Bar and restaurant services; Cafeteria and restaurant services; Café and restaurant services; Consulting in the field of restaurant menu development; Fast-food restaurant services; Hotel and restaurant services; Hotel, restaurant and bar services; Hotel, restaurant and catering services; Hotel, bar and restaurant services; Mobile restaurant services; Pop-up restaurant services; Self-service restaurant services; Udon and soba restaurant services. |
| **Register** | PRINCIPAL |
| **Serial Number** | 88381014 |
| **Filing Date** | 2019-04-11T00:00:00 |
| **Original Filing Basis** | 1b |
| **Current Filing Basis** | 1a |
| **Publication Date** | 2019-10-15 |
| **Registration Number** | 6180965 |
| **Date Registered** | 2020-10-20 |
| **Owner** | (REGISTRANT) BK Lobster, Inc. (CORPORATION; NEW YORK, USA); 23-25 New Lots Avenue #6-H, Brooklyn, NEW YORK 11212, UNITED STATES |
| **Type of Mark** | SERVICE MARK |
| **Mark Drawing Code** | (3) DESIGN PLUS WORDS, LETTERS, AND/OR NUMBERS |

Exhibit 13

| | |
|---|---|
| **Design Code** | 031909, 031923, 260102 |
| **Description of Mark** | • Color is not claimed as a feature of the mark.<br>• The mark consists of the underlined words, "BK Lobster" and a picture of a lobster in a circle. |
| **Disclaimer** | "BK LOBSTER" |
| **Live Dead Indicator** | LIVE |
| **Status** | REGISTERED |
| **Attorney of Record** | Keith White |

**Print:** February 20, 2024 5:03 PM

Exhibit 13

5872542

# Bajeko Sekuwa

| | |
|---|---|
| **Word Mark** | BAJEKO SEKUWA |
| **Goods/Services** | IC 043 US 100 101<br>Restaurant; Restaurant and bar services; Restaurant and café services; Restaurant and catering services; Restaurant services; Restaurant services, including sit-down service of food and take-out restaurant services; Bar and restaurant services; Cafeteria and restaurant services; Café and restaurant services; Café-restaurants; Self-service restaurant services. |
| **Register** | PRINCIPAL |
| **Serial Number** | 88342426 |
| **Filing Date** | 2019-03-15T00:00:00 |
| **Original Filing Basis** | 1a |
| **Current Filing Basis** | 1a |
| **Publication Date** | 2019-07-16 |
| **Registration Number** | 5872542 |
| **Date Registered** | 2019-10-01 |
| **Owner** | (REGISTRANT) Bajeko Sekuwa LLC (LIMITED LIABILITY COMPANY; DELAWARE, USA); 4726 49th Street, apt 2E, Woodside, NEW YORK 11377, UNITED STATES |
| **Type of Mark** | SERVICE MARK |
| **Mark Drawing Code** | (4) STANDARD CHARACTER MARK |
| **Translation** | The English translation of "Bajeko Sekuwa" in the mark is "Grandfather's Grill". |
| **Disclaimer** | "SEKUWA" |

Exhibit 13

| | |
|---|---|
| **Live Dead Indicator** | LIVE |
| **Status** | REGISTERED |
| **Attorney of Record** | Dilli Raj Bhatta |

**Print:** February 20, 2024 5:03 PM

Exhibit 13

7001685

# Big John's Tavern

| | |
|---|---|
| **Word Mark** | BIG JOHN'S TAVERN |
| **Goods/Services** | IC 043 US 100 101<br>Bar and cocktail lounge services; Bar and restaurant services; Bar services; Bar services featuring beer, wine, spirits, whiskey, vodka, rum, gin; Bartending services; Beer garden services; Breakfast restaurants; Brewpub services; Brunch restaurants; Café; Café and restaurant services; Café-restaurants; Catering; Catering for the provision of food and beverages; Cocktail lounge buffets; Cocktail lounge services; Cocktail lounges; Cocktail parlor services; Fast casual restaurants; Fast casual restaurants featuring American food fare; Food preparation; Food preparation services featuring beef, fish, poultry, seafood; Hotel, restaurant and bar services; Providing banquet and social function facilities for special occasions; Providing of food and drink; Providing of food and drink for patients and guests; Providing of food and drink via Bar and Restaurant; Provision of food and drink in restaurants; Pubs; Reservation of restaurants; Restaurant; Restaurant and bar services; Restaurant and bar services, including restaurant carryout services; Restaurant and café services; Restaurant and catering services; Restaurant and hotel services; Restaurant services featuring Americana food fare; Restaurant services, including sit-down service of food and take-out restaurant services; Restaurant services, namely, providing of food and beverages for consumption on and off the premises; Restaurant, bar and catering services; Restaurants; Restaurants featuring home delivery; Serving beverages in brewpubs; Serving beverages in microbreweries; Serving food and drinks; Serving of food and drink/beverages; Wine bars. |
| **Register** | PRINCIPAL |
| **Serial Number** | 90821400 |
| **Filing Date** | 2021-07-10T00:00:00 |
| **Original Filing Basis** | 1b |
| **Current Filing Basis** | 1a |
| **Publication Date** | 2022-05-10 |

Exhibit 13

| | |
|---|---|
| **Registration Number** | 7001685 |
| **Date Registered** | 2023-03-14 |
| **Owner** | (REGISTRANT) Scotty Sheriff (INDIVIDUAL; USA); P.O. Box 1300, Charleston, SOUTH CAROLINA 29402, UNITED STATES |
| **Type of Mark** | SERVICE MARK |
| **Mark Drawing Code** | (4) STANDARD CHARACTER MARK |
| **Disclaimer** | "TAVERN" |
| **Live Dead Indicator** | LIVE |
| **Status** | REGISTERED |
| **Attorney of Record** | Gregory A. Marshall |

**Print:** February 20, 2024 5:03 PM

Exhibit 13

3872057

# Baires Grill Restaurant

| | |
|---|---|
| **Word Mark** | BAIRES GRILL |
| **Goods/Services** | IC 043 US 100 101<br>Bar and restaurant services; Cafe and restaurant services; Cafe-restaurants; Carry-out restaurants; Restaurant; Restaurant and bar services; Restaurant and cafe services; Restaurant and catering services; Restaurant services; Restaurant services featuring Argentinean cuisine; Restaurant, bar and catering services; Restaurants; Restaurants featuring home delivery. |
| **Register** | PRINCIPAL |
| **Serial Number** | 77806288 |
| **Filing Date** | 2009-08-17T00:00:00 |
| **Original Filing Basis** | 1a |
| **Current Filing Basis** | 1a |
| **Publication Date** | 2010-08-24 |
| **Registration Number** | 3872057 |
| **Date Registered** | 2010-11-09 |
| **Owner** | • (REGISTRANT) Marcelo, Alberto F. (INDIVIDUAL; ARGENTINA); 1116 Lincoln Road, Miami Beach, FLORIDA 33139, UNITED STATES<br>• (LAST LISTED OWNER) BAIRES INTELLECTUAL PROPERTY, LLC (LIMITED LIABILITY COMPANY; DELAWARE, USA); 1800 N Bayshore Dr, Apt 3002, MIAMI, FLORIDA 33132, UNITED STATES |
| **Type of Mark** | SERVICE MARK |
| **Mark Drawing Code** | (4) STANDARD CHARACTER MARK |
| **Disclaimer** | "GRILL" |
| **Live Dead Indicator** | LIVE |
| **Status** | CONCURRENT USE PROCEEDING TERMINATED-GRANTED |
| **Attorney of Record** | Oliver A. Ruiz, Esq. |

Exhibit 13

**Print:** February 20, 2024 5:03 PM

Exhibit 13

**5426790**



| | |
|---|---|
| **Word Mark** | BAMBOO RESTAURANT COLOMBIAN CUISINE |
| **Goods/Services** | IC 043 US 100 101<br>Food preparation; Restaurant; Restaurant and bar information services; Restaurant and bar services; Restaurant and bar services, including restaurant carryout services; Restaurant and café services; Restaurant and catering services; Restaurant and hotel services; Restaurant reservation services; Restaurant services; Restaurant services featuring sandwiches; Restaurant services, including sit-down service of food and take-out restaurant services; Restaurant services, namely, providing of food and beverages for consumption on and off the premises; Restaurant, bar and catering services; Bar and restaurant services; Cafeteria and restaurant services; Café and restaurant services; Hotel and restaurant services; Mobile restaurant services; Provision of food and drink in restaurants; Take-out restaurant services. |
| **Register** | PRINCIPAL |
| **Serial Number** | 87546836 |
| **Filing Date** | 2017-07-28T00:00:00 |
| **Original Filing Basis** | 1a |
| **Current Filing Basis** | 1a |
| **Publication Date** | 2018-01-02 |
| **Registration Number** | 5426790 |
| **Date Registered** | 2018-03-20 |
| **Owner** | (REGISTRANT) Corintios Inc. (CORPORATION; FLORIDA, USA); 15235 SW 31th Street, Miami, FLORIDA 33185, UNITED STATES |
| **Type of Mark** | SERVICE MARK |
| **Mark Drawing Code** | (3) DESIGN PLUS WORDS, LETTERS, AND/OR NUMBERS |

Exhibit 13

**Design Code**          051304, 270304

**Description of Mark**

- The color(s) green and black is/are claimed as a feature of the mark.
- The mark consists of the word "BAMBOO" in a green stylized font with black stylization and outlining resembling bamboo stems above the word "RESTAURANT" in black stylized font which is above the words "COLOMBIAN CUISINE" in black stylized font, and these words are located next to a green bamboo stem with leaves with black stylization and outlining.

**Disclaimer**          "RESTAURANT" AND "COLOMBIAN CUISINE"

**Live Dead Indicator**          LIVE

**Status**          SECTION 8 & 15-ACCEPTED AND ACKNOWLEDGED

**Attorney of Record**          Roberto E. Moran, Esq.

**Print:** February 20, 2024 5:03 PM

Exhibit 13

6436974



| | |
|---|---|
| **Word Mark** | BAROO |
| **Goods/Services** | IC 043 US 100 101<br>Restaurant; Restaurant and bar services; Restaurant and bar services, including restaurant carryout services; Restaurant and café services; Restaurant and catering services; Restaurant services; Restaurant services, including sit-down service of food and take-out restaurant services; Restaurant services, namely, providing of food and beverages for consumption on and off the premises; Take-out restaurant services. |
| **Register** | PRINCIPAL |
| **Serial Number** | 88870513 |
| **Filing Date** | 2020-04-14T00:00:00 |
| **Original Filing Basis** | 1a |
| **Current Filing Basis** | 1a |
| **Publication Date** | 2021-05-18 |
| **Registration Number** | 6436974 |
| **Date Registered** | 2021-08-03 |
| **Owner** | (REGISTRANT) Baroo LLC (LIMITED LIABILITY COMPANY; CALIFORNIA, USA); 3533 Madera Avenue, Los Angeles, CALIFORNIA 90039, UNITED STATES |
| **Type of Mark** | SERVICE MARK |
| **Mark Drawing Code** | (3) DESIGN PLUS WORDS, LETTERS, AND/OR NUMBERS |
| **Design Code** | 110306, 261709 |

Exhibit 13

|                        |                                                                                                          |
|------------------------|----------------------------------------------------------------------------------------------------------|
| **Description of Mark** | • Color is not claimed as a feature of the mark.<br>• The mark consists of a calligraphic depiction of a bowl and the stylized word "baroo" underneath. |
| **Translation**        | The English translation of "baroo" in the mark is the Korean word for "a bowl from which Buddhist monks eat in Korea". |
| **Live Dead Indicator** | LIVE                                                                                                     |
| **Status**             | REGISTERED                                                                                                |

**Print:** February 20, 2024 5:03 PM

Exhibit 13

6559985

# Banana Brasil

| | |
|---|---|
| **Word Mark** | BANANA BRASIL |
| **Goods/Services** | IC 043 US 100 101<br>Restaurants; Restaurant; Restaurant and bar services, including restaurant carryout services; Restaurant and café services; Restaurant and catering services; Restaurant services; Restaurant services featuring sandwiches; Restaurant services featuring south and central american cuisine; Restaurant services, including sit-down service of food and take-out restaurant services; Restaurant services, namely, providing of food and beverages for consumption on and off the premises; Restaurant, bar and catering services; Bar and restaurant services; Breakfast restaurants; Brunch restaurants; Cafeteria and restaurant services; Café and restaurant services; Café-restaurants; Fast casual restaurants; Fast casual restaurants featuring south and central american cuisine; Fast-food restaurant services; Fast-food restaurants; Fast-food restaurants and snackbars; Providing of food and drink via restaurants; Self service restaurants; Self-service restaurant services; Take-out restaurant services. |
| **Register** | PRINCIPAL |
| **Serial Number** | 90438276 |
| **Filing Date** | 2020-12-31T00:00:00 |
| **Original Filing Basis** | 1a |
| **Current Filing Basis** | 1a |
| **Publication Date** | 2021-08-31 |
| **Registration Number** | 6559985 |
| **Date Registered** | 2021-11-16 |
| **Owner** | (REGISTRANT) Coelho, Nilton (INDIVIDUAL; USA); 85 Riverford Road, Brookfield, CONNECTICUT 06804, UNITED STATES |
| **Type of Mark** | SERVICE MARK |

Exhibit 13

**Mark Drawing Code**      (4) STANDARD CHARACTER MARK

**Disclaimer**      "BRASIL"

**Live Dead Indicator**      LIVE

**Status**      REGISTERED

**Attorney of Record**      Joseph Coco

**Print:** February 20, 2024 5:03 PM

Exhibit 13



The *American* **dictionary** *of the* English HERITAGE® Language

Search


**HOW TO USE THE DICTIONARY**

To look up an entry in *The American Heritage Dictionary of the English Language*, use the search window above. For best results, after typing in the word, click on the "Search" button instead of using the "enter" key.

Some compound words (like *bus rapid transit, dog whistle*, or *identity theft*) don't appear on the drop-down list when you type them in the search bar. For best results with compound words, place a quotation mark before the compound word in the search window.

**GUIDE TO THE DICTIONARY** ▸


**THE USAGE PANEL**

The Usage Panel is a group of nearly 200 prominent scholars, creative writers, journalists, diplomats, and others in occupations requiring mastery of language. Annual surveys have gauged the acceptability of particular usages and grammatical constructions.

**THE PANELISTS** ▸

**cow**¹  (kou)

Share: ✕ Post

*n.*
1. The mature female of cattle of the genus *Bos.*
2. The mature female of certain other large animals, such as elephants, moose, or whales.
3. A domesticated bovine of either sex or any age.

*Idioms:*
**have a cow**
    *Slang* To become amazed, angered, or upset: *He had a cow when he saw the mess we made.*
**till the cows come home** *Informal*
    For a very long time; indefinitely: *They could argue till the cows come home and still not reach an agreement.*

[Middle English *cou*, from Old English *cū*; see **gʷou-** in the Appendix of Indo-European roots.]

**cow′y** *adj.*

The American Heritage® Dictionary of the English Language, Fifth Edition copyright ©2022 by HarperCollins Publishers. All rights reserved.

**cow**²  (kou)

Share: ✕ Post

*tr.v.* **cowed, cow·ing, cows**
    To frighten or subdue with threats or a show of force. See Synonyms at **intimidate.**

[Probably of Scandinavian origin.]

**cow′ed·ly** (-ĭd-lē) *adv.*

The American Heritage® Dictionary of the English Language, Fifth Edition copyright ©2022 by HarperCollins Publishers. All rights reserved.

## Indo-European & Semitic Roots Appendices

Thousands of entries in the dictionary include etymologies that trace their origins back to reconstructed proto-languages. You can obtain more information about these forms in our online appendices:


**AMERIC… DICTION…**

The new America… Dictionary app is… for iOS and Andr…


**THE AM… HERITA… DICTION…**

The articles in ou… new words, revis… interesting image… edition, discussi… and more.

**THE 100**

See word lists fro… selling 100 Word…

**FIND OUT MORE**


**INTERE… DICTION…**

Check out the Di… of North America… http://www.diction…

Exhibit 13

Indo-European Roots
Semitic Roots

The Indo-European appendix covers nearly half of the Indo-European roots that have left their mark on English words. A more complete treatment of Indo-European roots and the English words derived from them is available in our Dictionary of Indo-European Roots.



## American Heritage Dictionary Products

The American Heritage Dictionary, 5th Edition

The American Heritage Dictionary of Idioms

The American Heritage Roget's Thesaurus

Curious George's Dictionary

The American Heritage Children's Dictionary

Browse Reading Guides                              OpenBook API

Exhibit 13



*The*
**AMERICAN HERITAGE** dictionary *of the* English Language

**Search**

**ha·lal** (hə-läl′) *Islam*

Share: 

*adj.*
1. Of or being meat from animals slaughtered in the manner prescribed by the shari'a: *a halal butcher; a halal label.*
2. In accordance with or permitted under the shari'a.

*n.*
Halal meat.

[Arabic *ḥalāl*, legally permissible, from *ḥalla*, to undo, free, be permissible; see **ḥll in the Appendix of Semitic roots.**]

The American Heritage® Dictionary of the English Language, Fifth Edition copyright ©2022 by HarperCollins Publishers. All rights reserved.

## Indo-European & Semitic Roots Appendices

Thousands of entries in the dictionary include etymologies that trace their origins back to reconstructed proto-languages. You can obtain more information about these forms in our online appendices:

**Indo-European Roots**

**Semitic Roots**

The Indo-European appendix covers nearly half of the Indo-European roots that have left their mark on English words. A more complete treatment of Indo-European roots and the English words derived from them is available in our **Dictionary of Indo-European Roots.**

## American Heritage Dictionary Products

    

 **HOW TO USE THE DICTIONARY**

To look up an entry in *The American Heritage Dictionary of the English Language,* use the search window above. For best results, after typing in the word, click on the "Search" button instead of using the "enter" key.

Some compound words (like *bus rapid transit, dog whistle,* or *identity theft*) don't appear on the drop-down list when you type them in the search bar. For best results with compound words, place a quotation mark before the compound word in the search window.

**GUIDE TO THE DICTIONARY** ▸

 **THE USAGE PANEL**

The Usage Panel is a group of nearly 200 prominent scholars, creative writers, journalists, diplomats, and others in occupations requiring mastery of language. Annual surveys have gauged the acceptability of particular usages and grammatical constructions.

**THE PANELISTS** ▸

 **AMERIC DICTION**

The new America Dictionary app is for iOS and Andr

 **THE AM HERITA DICTION**

The articles in ou new words, revis interesting image edition, discussi and more.

**THE 100**

See word lists fro selling 100 Word

**FIND OUT MORE**

 **INTERE DICTION**

Check out the Di of North America http://www.diction

Exhibit 13

The American Heritage Dictionary, 5th Edition | The American Heritage Dictionary of Idioms | The American Heritage Roget's Thesaurus | Curious George's Dictionary | The American Heritage Children's Dictionary

**CONTACT US**

Customer Service
Make Me An Author
Ebooks Help with Glose Reader

**ABOUT US**

Company Profile
Leadership Team
Corporate Social Responsibility
HarperCollins Careers
HarperCollins Imprints
HarperGreen
Social Media Directory
Accessibility

**FOR READERS**

Browse Reading Guides

**FOR AUTHORS**

Submit a Manuscript
Report Piracy
Agent Portal

**MEDIA**

Publicity Contacts
Press Room

**SERVICES**

HarperCollins Speakers Bureau
Library Services
Academic Services
Desk & Exam Copies
Review Copies

OpenBook API
Marketing Partnerships

**COVID-19 RESOURCES & PERMISSIONS**

Permissions for Adult Online Readings
Permissions for Kids Online Readings

**SALES & RIGHTS**

Booksellers & Retailer Ordering
HarperCollins Catalogs
Permissions
Subsidiary Rights
Media Rights and Content Development

**GLOSE APP**

iPhone
Android

**GLOBAL DIVISIONS**

HarperCollins US
HarperCollins Canada
HarperCollins Christian
HarperCollins Australia
HarperCollins India
HarperCollins UK

Terms of Use • Terms of Sale • Your Ad Choices • Privacy Policy • Californi...

5:35:40 PM 2/20/2024                    https://www.ahdictionary.com/word/search.html?q=halal

Exhibit 13



Exhibit 13



: to destroy the resolve or courage of

*also* : to bring to a state or an action by intimidation → used with *into*

... like too many Asian armies, adept at cowing a population into feeding them ...
— Edward Lansdale

**cowedly** kau(-ə)d-lē ◄) adverb

### Synonyms

**Verb**

| | | |
|---|---|---|
| blackjack | bogart | browbeat |
| bulldoze | bully | bullyrag |
| hector | intimidate | strong-arm |

See all Synonyms & Antonyms in Thesaurus ›

Waiting for sid.storygize.net...

5:35:10 PM 2/20/2024                                    https://www.merriam-webster.com/dictionary/cow

Exhibit 13



Exhibit 13



**First Known Use**

1797, in the meaning defined at sense 1

**Time Traveler**

The first known use of *halal* was in 1797

See more words from the same year

⌐ **Dictionary Entries Near *halal***

halakic

**halal**

halala

See More Nearby Entries ›

⌐ **Cite this Entry**

Style    MLA

"Halal." *Merriam-Webster.com Dictionary*, Merriam-Webster, https://www.merriam-webster.com/dictionary/halal. Accessed 20 Feb. 2024.

5:34:46 PM 2/20/2024                                         https://www.merriam-webster.com/dictionary/halal

Exhibit 13

Milk Fed Veal—Our True Specialty! When it comes to beef, nothing beats the quality experience of meat from milk-fed baby cows. We're pleased to offer you, tender veal/baby calf meat as part of our live beef market. We keep our veal farm calves on hand at all times to satisfy your veal cravings and desires.

## 10 Benefits of Quality 🐄 Cow Beef

1. *Wide range of vitamins and minerals*

2. B12 vitamin (helps to keep your nerve & blood cells healthy)

3. B3 vitamin (helps to keep your nervous, digestive system, and skin healthy)

4. Zinc (helps immune system fight bacteria & viruses)

5. Has glutathione which helps protect every kind of cell in our body from cellular damage

6. High in protein, like amino acids —that helps our body repair and make bone, skin & cartilage

7. Helps prevent Iron deficiency anemia (beef liver contains the best source of iron)

8. Has carnosine — which helps boost the immune system and reduce inflammation

9. *Contains creatine, which assists in muscle growth and development.*

10. *Delicious and we have plenty of it!*

Read more about the great benefits of eating beef.

You can stop buying frozen and processed cow beef! You have the choice to have your beef or veal delivered by us from our farm to your table with a simple call-to-order process. We will be at your service, with our healthy and quality cow beef meats for sale. You'll be satisfied with us when you

Exhibit 13

source your Halal cow meat from Shepherd's Touch Farm!



5:33:46 PM 2/20/2024                          https://www.shepherdstouchfarm.com/beef-veal-meat/

Exhibit 13

**United States Patent and Trademark Office (USPTO)**

# USPTO OFFICIAL NOTICE

Office Action (Official Letter) has issued
on February 20, 2024 for
**U.S. Trademark Application Serial No. 98006584**

A USPTO examining attorney has reviewed your trademark application and issued an Office action.  You must respond to this Office action to avoid your application abandoning.  Follow the steps below.

**(1)  Read the Office action**.  This email is NOT the Office action.

**(2)  Respond to the Office action by the deadline** using the Trademark Electronic Application System (TEAS).  Your response, or extension request, must be received by the USPTO on or before 11:59 p.m. **Eastern Time** of the last day of the response deadline.  Otherwise, your application will be abandoned.  See the Office action itself regarding how to respond.

**(3)  Direct general questions** about using USPTO electronic forms, the USPTO website, the application process, the status of your application, and whether there are outstanding deadlines to the Trademark Assistance Center (TAC).

After reading the Office action, address any question(s) regarding the specific content to the USPTO examining attorney identified in the Office action.

## GENERAL GUIDANCE

- **Check the status of your application periodically** in the Trademark Status & Document Retrieval (TSDR) database to avoid missing critical deadlines.

- **Update your correspondence email address** to ensure you receive important USPTO notices about your application.

- **Beware of trademark-related scams**.  Protect yourself from people and companies that may try to take financial advantage of you.  Private companies may call you and pretend to be the USPTO or may send you communications that resemble official USPTO documents to trick you.  We will never request your credit card number or social security number over the phone.  Verify the correspondence originated from us by using your serial number in our database, TSDR, to confirm that it appears under the "Documents" tab, or contact the Trademark Assistance Center.

- **Hiring a U.S.-licensed attorney**.  If you do not have an attorney and are not required to

Exhibit 13

have one under the trademark rules, we encourage you to hire a U.S.-licensed attorney specializing in trademark law to help guide you through the registration process.  The USPTO examining attorney is not your attorney and cannot give you legal advice, but rather works for and represents the USPTO in trademark matters.

Exhibit 13